IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES HAGAN | § | PLAINTIFF |
| | § | |
| v. | § | CIVIL NO.: 1:13cv268-HSO-RHW |
| | § | |
| JACKSON COUNTY, MISSISSIPPI, | § | DEFENDANTS |
| MIKE BYRD, Individually and | § | |
| in his Official Capacity as | § | |
| Sheriff of Jackson County, | § | |
| Mississippi; HOPE THORNTON, | § | |
| Individually and in her Official | § | |
| Capacity as Detective in the | § | |
| Jackson County Sheriff's | § | |
| Department; LINDA JONES, | § | |
| Individually and in her Official | § | |
| Capacity as Detective in the | § | |
| Jackson County Sheriff's | § | |
| Department; EDDIE CLARK, | § | |
| Individually and in his Official | § | |
| Capacity as Detective in the Jackson | § | |
| County Sheriff's Department; CHAD | § | |
| HECK, Individually and in his | § | |
| Official Capacity as Sergeant in the | § | |
| Jackson County Sheriff's | § | |
| Department; TRAVELERS | § | |
| CASUALTY AND SURETY | § | |
| COMPANY OF AMERICA, JOHN | § | |
| OR JANE DOES 1-10 | § | |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS HOPE THORNTON, LINDA JONES,
EDDIE CLARK, AND CHAD HECK'S MOTION FOR SUMMARY
JUDGMENT BASED ON QUALIFIED IMMUNITY**

BEFORE THE COURT is the Motion for Summary Judgment Based on

Qualified Immunity [57] filed by Defendants Hope Thornton, Linda Jones, Eddie

Clark, and Chad Heck.  Plaintiff James Hagan has filed a Response in Opposition

[139] and Defendants Hope Thornton, Linda Jones, Eddie Clark, and Chad Heck

have filed a Rebuttal [147].  Having considered the parties' submissions, the record, and relevant legal authority, the Court is of the opinion that Defendants Hope Thornton, Linda Jones, Eddie Clark, and Chad Heck's Motion should be granted in part and denied in part.  Defendants Hope Thornton, Linda Jones, Eddie Clark, and Chad Heck are entitled to qualified immunity on Plaintiff's individual capacity claims against them under federal law, and are further entitled to summary judgment on each of Plaintiff's state law claims against them, with the exception of Plaintiff's claim for malicious prosecution.

## I. BACKGROUND

### A.    Factual Background

During the afternoon of November 28, 2011, Rebie Walley ("Walley") presented herself at the Jackson County Sheriff's Office ("JCSO") to make a report of potential criminal activity allegedly committed by Plaintiff James Hagan ("Plaintiff") against his then sixteen-year-old stepdaughter, MW.  Jackson County Investigative Report 1 [139-1].  Walley initially spoke to Annie Vaughn ("Vaughn"), an employee of the JCSO who takes reports of alleged criminal activity, but Defendant Detective Hope Thornton ("Thornton"), an investigator with the JCSO, soon joined Walley and Vaughn.  Dep. of Hope Thornton ("Thornton Dep.") 13:19-14:7 [139-45].  Thornton recalls that Walley's report was based on information Walley had received from KS, MW's then seventeen-year-old stepsister.  *Id.* at 14:13-18, 19:15-18.  KS had allegedly informed Walley that MW complained to KS that Plaintiff was "touching her[,]" "talking trash[,]" and would "crawl[] in bed with

[MW]." *Id*. at 20:19-23, 24:17-25.  Walley added that MW told KS that MW would often notice Plaintiff looking into a bathroom window from outside the home while MW showered in the bathroom, and Walley expressed concern that Plaintiff may have been taking photographs of MW.  *Id*. at 29:14-16.  Thornton did not conduct an independent investigation into the background of either Walley or KS to ascertain whether either had a criminal history.  *Id*. at 15:16-21.  Thornton relied upon the fact that Walley was a youth minister and upon Walley's demeanor and statements. *Id*. at 23:11-13; 24:1-2.

1.  Investigation of Criminal Activity Allegedly Perpetrated by Plaintiff Against MW

Based upon Walley's report, on the morning of November 29, 2011, Thornton prepared two affidavits seeking two separate search warrants for Plaintiff's residence, one seeking forensic evidence and the other seeking computers and electronic equipment.  Affs. for Search Warrants [139-6] [139-7].  Thornton relied almost exclusively upon Walley's report to obtain the search warrants.  Thornton Dep. 22:3-6 [139-45].  Thornton also independently verified Walley's statement that Plaintiff was an alderman for the City of Ocean Springs, and learned that Plaintiff had been issued a laptop by the City in 2009 but had reported it missing in 2010. Aff. of Search Warrant 7 [139-7].  According to Vickie Sears, an employee of the JCSO assigned to the Criminal Approval Investigation Division, Thornton and Defendant Investigator Linda Jones ("Jones") were concerned that they were not going to be able to convince a judge to issue search warrants related to Plaintiff's residence because "they did[ not] have anything . . . ."  Aff. of Vickie Spears ¶ 3 [139-

4].  Defendants Thornton and Jones did in fact obtain both search warrants from

Justice Court Judge Cecil Byrd later that morning.[1]  Search Warrants [139-8] [139-

9].

Subsequent to obtaining the search warrants but prior to initiating any

search, Defendants Thornton and Jones, along with John McGrath ("McGrath"), a

Mississippi Department of Human Services ("DHS") employee, made contact with

MW and her mother at Ocean Springs High School at or around 12:30 p.m. on

November 29, 2011.  Pl.'s Ex. "10", Excerpt from DHS Investigation Report 3 [145-

3]; Dep. of Linda Jones ("Jones Dep.") 15:13-16:1, 17:21-18:10 [139-50].  When asked

why she thought that Jones and McGrath wanted to talk with her, MW indicated to

Jones and McGrath that she believed they wanted to talk to her because Plaintiff

touched MW and did things to make MW feel uncomfortable.  Thornton Dep. 65:2-

12 [139-46]; Jones Dep. 18:21-19:12 [139-50].  The record reflects that at that point

a forensic interview of MW was scheduled for 4:00 p.m. that same afternoon, and

Thornton and Jones proceeded to Plaintiff's residence, where a search was by then

underway.  Excerpt from DHS Investigation Report 2 [145-3]; Jones Dep. 18:20-19:9

[139-50].  The search of Plaintiff's residence yielded a Toshiba laptop computer, a

Dell desktop computer, two external drives, a digital camera, and various other

electronics.  Return [139-8].

---

[1] Plaintiff points out that Judge Byrd is the brother of Defendant Mike Byrd, who was then the Jackson County Sheriff.  Mem. in Opp'n to Mot. for Summ. J. 2 [140].  However, Plaintiff has not submitted, and the record does not contain, any competent evidence beyond Plaintiff's unsupported inference that this relationship influenced or otherwise affected Judge Byrd's review of the search warrant affidavits and his decision to issue the search warrants.  This is not sufficient to create a material fact question that Judge Byrd's probable cause determination was somehow tainted.

Jones returned to the school at or around 3:20 p.m. to transport MW to the child advocacy center to undergo a forensic interview.  Jones Dep. 18:17-19:9, 19:13-22 [139-50].  The interview of MW commenced at or around 4:37 p.m. on November 29, 2011.  Tr. of Forensic Interview of MW 2 [145-6].  The interview was conducted by Kristian Clark, a licensed forensic interviewer, and was observed by Jones via a camera.  Jones Dep. 20:19-21:1 [139-50].  During the forensic interview, MW indicated that Plaintiff "always" talked about her breasts, and had been doing so for at least the previous year.  Tr. of Forensic Interview of MW 4-5, 7 [145-6].  MW described an incident which occurred in Michigan in which Plaintiff laid in a bed with MW and allegedly inappropriately touched MW's belly beneath her shirt and made comments about the effect that his touching had on MW's breasts.  *Id*. at 4-5.  MW provided details regarding the fact that Plaintiff on numerous occasions had painfully grabbed MW's breasts from the outside of her clothing, but did so in a purportedly "joking" manner referred to as a "tiddy twister."  *Id*. at 13-15.  MW also described instances in which Plaintiff would allegedly take pictures of MW's breasts, which according to MW only occurred while she was clothed.  *Id*. at 7, 11.

2.    Plaintiff's Arrest on November 29, 2011

After the forensic interview concluded at or around 5:10 p.m. on November 29, 2011, Jones relayed to Thornton the results of the interview.  *Id*. at 16; Jones Dep. 41:3-42:13 [139-51].  Although Jones cannot recall *verbatim* what she told Thornton, Jones informed Thornton that MW had substantiated the allegations of sexual abuse.  Jones Dep. 44:21-25 [139-51].  At or around 5:37 p.m. the same

afternoon, Plaintiff presented himself to the JCSO and was placed under arrest by Thornton for the crimes of molestation and embezzlement of the Ocean Springs-issued laptop computer.  Thornton Dep. 72:7-15 [139-46]; JCSO Custody Form [139-18].  Although she arrested Plaintiff without an arrest warrant, Thornton made the arrest because she believed sufficient probable cause existed to place Plaintiff under arrest for molestation and embezzlement.  Thornton Dep. 73:5-9, 74:18-20 [139-46].  Thornton obtained arrest warrants on both charges the following day, November 30, 2011.  Warrants [139-29].  These charges were submitted to a grand jury, which returned a "no true bill" for the molestation charge on or around June 25, 2012, and a "no true bill" for the embezzlement charge on or around October 31, 2012.  Jackson County Grand Jury No Bill Lists [139-37] [139-39].

   3.   Search of Plaintiff's Office and Seizure of Items from the Office

   At some point prior to nightfall on November 29, 2011,[2] Defendant Eddie Clark ("Clark"), an investigator with the JCSO, and Defendant Chad Heck ("Heck"), a Sergeant with the JCSO, were instructed by their superior, Captain James Mick Sears ("Sears"), to travel to the Moss Point Police Department to retrieve a laptop computer belonging to the City of Ocean Springs but allegedly embezzled by

---

[2] Plaintiff assumes Clark and Heck made contact with him "[s]ometime before noon" ostensibly on the basis of testimony by Heck that he believes that he and Clark were instructed to drive to Moss Point "before noon."  Dep. of Chad Heck ("Heck Dep.") 8:8-13 [139-14].  However, the record as a whole does not support this assumption.  Both Heck and Clark agree that by the time they left Moss Point with the computer and cellular telephone, it was getting dark.  Id. at 11:8-10; Dep. of Eddie Clark ("Clark Dep.") 23:14-17 [139-16].  According to Clark, the pair was only in Moss Point for an hour.  Clark Dep. 23:18-20 [139-16].  Further, the record indicates Plaintiff presented himself to the JCSO at or around 5:37 p.m. on November 29, 2011, and Heck recalls seeing Plaintiff arrive at the JCSO as Heck and Clark were leaving the JCSO after delivering the laptop and cellular telephone to Thornton.  Id. at 11:16-21; JCSO Custody Form [139-18].

Plaintiff.[3]  Clark Dep. 20:23-21:1 [139-16]; Heck Dep. 6:24-7:11 [139-14].  Despite being instructed to retrieve the laptop, neither Clark nor Heck knew whether a search warrant had been issued for the computer or whether the computer had been used in the commission of a crime.  *Id*. at 7:17-23; Clark Dep. 26:12-18 [139-16].

Once Clark and Heck arrived at the police department, Plaintiff led them to Plaintiff's office in the City of Moss Point Code Enforcement Office and turned over the laptop which had been issued by the City of Ocean Springs.  Clark Dep.  25:13-16 [139-16].  Heck contacted Sears to verify that he had obtained possession of the correct computer, and after confirming that Heck had the correct laptop, Sears instructed Heck to "detain" Plaintiff's cellular telephone because officers were executing a search warrant at Plaintiff's home and believed that Plaintiff had been texting his wife, who was at home during the search.  Heck Dep. 10:2-5 [139-14].  Heck recalls that Plaintiff ultimately handed over his cellular telephone.  *Id*. at 10:20-25.  Clark claims that Plaintiff was free to decline to speak with the deputies and was free to leave at anytime.  Clark Dep. 31:24-32:2 [139-16].  Neither Clark nor Heck informed Plaintiff of this fact, or of the fact that Plaintiff did not have to turn over the computer.  *Id*. at 28:5-8; Heck Dep. 12:4-11 [139-14].  Heck and Clark delivered the computer and cellular telephone to Thornton later that same day.  Heck Dep. 11:8-18 [139-14].  Neither Heck nor Clark had any further involvement with the investigation of Plaintiff.  *Id*. at 19:21-23; Clark Dep. 28:24-29:5 [139-16].

---

[3] Although the record is not clear as to whether Clark or Heck were aware, Plaintiff, in response to a request by the City of Ocean Springs to produce the City-issued laptop to have web filtering software installed on the laptop, had previously notified the City of Ocean Springs on or around November 10, 2010, that the laptop had been lost.  Investigator's Report 5 [139-11].

On November 30, 2011, Thornton sought a search warrant for Plaintiff's office at the Moss Point Code Enforcement Office located at 4125 Main Street, Moss Point, Mississippi.  Aff. for Search Warrant [139-24].  The Affidavit requesting the search warrant included a list of items believed to be located in Plaintiff's office, which was identical to a list of items previously provided via electronic mail to Thornton by a detective in the Moss Point Police Department.  *Compare id. with* Pl.'s Ex. "3" [139-23].  The search warrant was issued by a county court judge that same day.  By its terms, the search warrant authorized a search of the information and data stored on electronic devices located in Plaintiff's office.  Aff. for Search Warrant [139-25].  The return on the search warrant indicates that the search warrant was executed at or around 3:30 p.m. on November 30, 2011, and that the items seized were the same as the items identified by the detective from the Moss Point Police Department and listed in the Affidavit for Search Warrant.  Return [139-27].

    4.    <u>Plaintiff's Arrest on December 6, 2011</u>

On December 5, 2011, Thornton performed a scan of the Dell laptop computer which belonged to the City of Ocean Springs and which had been located in Plaintiff's Moss Point office.  Investigator's Report 4 [139-11].  The scan revealed one video dating back to December 3, 2009, which appeared to be child pornography.  *Id.*; Aff. in State Cases [139-31].  Thornton obtained a warrant for Plaintiff's arrest on December 5, 2011, based on one count of possession of child pornography.  Warrant [139-32].  Plaintiff was arrested at or around 1:10 p.m. on

December 6, 2011.  JCSO Custody Form [139-33].  On August 21, 2012, a grand jury

indicted Plaintiff on the charge of exploitation of a child based on the child

pornography found on the Dell laptop belonging to the City of Ocean Springs.[4]

Plaintiff claims that this indictment was based on "illegally seized evidence and

evidence that had not been properly secured in a safe location . . . ."  Mem. in Opp'n

to Mot. for Summ. J. 8 [140].  On November 30, 2012, at the request of the Jackson

County District Attorney, the Circuit Court of Jackson County entered a *Nolle*

*Prosequi* Order [139-40] effectively dismissing the charge against Plaintiff for

exploitation of a child.

B.    Procedural Background

On June 24, 2013, Plaintiff filed the Complaint [1] in this case advancing

claims pursuant to 42 U.S.C. §§ 1983 and 1985.  The Complaint alleges that

Defendants violated Plaintiff's right to be free from false arrest as provided by the

Fourth and Fourteenth Amendments, his right to be free from unreasonable

searches and seizures under the Fourth Amendment, and his right not to be

deprived of liberty without due process of law as guaranteed by the Fifth and

Fourteenth Amendments.  Compl. 22 [1].  Plaintiff also appears to assert claims

under both federal and state law for malicious prosecution, intentional infliction of

emotional distress, abuse of process, civil conspiracy, and "neglect."  *Id*. at 24-28, 31-

32.  Plaintiff further alleges pursuant to § 1983 a general "[v]iolation of [c]ivil

[r]ights" and a violation of his First, Fourth, Fifth, and Fourteenth Amendment

---

[4] The possession of child pornography charge was referred to as a charge for "exploitation of a child" throughout the grand jury proceedings.  Indictment [139-38].

rights.  *Id*. at 28-31.  As against Defendant Jackson County, Plaintiff makes a claim under the Mississippi Torts Claims Act, Mississippi Code Ann. §§ 11-46-1 to -23 ("MTCA"), and a claim based upon respondeat superior liability.  *Id*. at 32-34.

Defendants Hope Thornton, Linda Jones, Eddie Clark, and Chad Heck (collectively, "Defendants") now move for summary judgment asserting that they are entitled to qualified immunity with respect to Plaintiff's claims against them in their individual capacities for false arrest, unreasonable search and seizure, malicious prosecution, abuse of process, "violation of civil rights," and civil conspiracy and neglect asserted under federal law.[5]  Mem. in Supp. of Mot. for Summ. J. 8-16 [58].  Defendants further contend that they are entitled to immunity under the MTCA from Plaintiff's state law claims for false arrest, unreasonable search and seizure, malicious prosecution, intentional infliction of emotional distress, abuse of process, "violation of civil rights," and civil conspiracy and neglect. *Id*.  Defendants alternatively argue that to the extent Plaintiff may be asserting intentional tort claims falling outside the scope of the MTCA, such claims are barred by the applicable one-year statute of limitations contained in Mississippi Code Annotated § 15-1-35, and that no discovery rule applies to toll the limitations period.  *Id*.; Rebuttal 2-7 [148].

Plaintiff responds that Defendant Thornton is not entitled to qualified immunity because Thornton, when asked hypothetical questions regarding

---

[5] The Complaint [1] named Defendants in both their official and individual capacities, but on February 10, 2014, the Court granted Defendants' Motion to Dismiss [22] the official capacity claims against these Defendants, which left pending the claims against Defendants in their individual capacities.  Order 5 [84].

variations in the evidence underlying the arrest of Plaintiff on November 29, 2011, responded that she would not have had sufficient evidence to support obtaining the search warrants, the embezzlement charge, or the molestation charge based upon the various hypothetical situations posed by counsel. Mem. in Opp'n to Mot. for Summ. J. 11-13 [140] (citing Grand Jury Testimony of Hope [Thornton] 58, Case No. JRH12-2012 [145-1]). Plaintiff argues that Defendants Heck and Clark are not entitled to qualified immunity with respect to Plaintiff's false arrest and unreasonable search and seizure claims based on the Fourth Amendment because they detained Plaintiff, searched Plaintiff's office, and seized Plaintiff's cellular telephone and laptop computer without an arrest warrant or probable cause. *Id.* at 13-19. Plaintiff maintains that Defendant Jones is not entitled to qualified immunity with respect to Plaintiff's Fourth, Sixth, and Fourteenth Amendment claims because she acted with reckless disregard for the truth while playing a "vital role" in procuring an arrest warrant for Plaintiff related to the charge of touching a child for lustful purposes. *Id.* at 19-25. Plaintiff further maintains that Thornton is not entitled to qualified immunity as to Plaintiff's Fourth, Sixth, and Fourteenth Amendment claims because, as lead investigator, she allowed evidence to be seized before search warrants were issued, she did not properly investigate the allegations made against Plaintiff, and she arrested Plaintiff despite knowing there was insufficient evidence to establish probable cause as to any of the crimes for which Plaintiff was arrested. *Id.* at 25-34.

Plaintiff posits that his state law claims are not time-barred because the statute of limitations did not begin to run until, at the earliest, June 28, 2012. *Id.* at 34-36. Plaintiff also asserts that his claims under the MTCA survive summary judgment because he has raised a genuine issue of material fact as to whether or not Defendants' actions were committed in bad faith. *Id.* at 36-38.

## II. <u>DISCUSSION</u>

### A.   <u>Legal Standard</u>

The defense of qualified immunity shields governmental officials from civil liability for damages based upon the performance of discretionary functions if the officials' actions did not violate clearly established constitutional or statutory law of which a reasonable person in their position would have known. *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006) (per curiam). "[T]he usual summary judgment burden of proof is altered in the case of a qualified immunity defense." *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik*, 422 F.3d at 262).

Although all inferences are drawn in a plaintiff's favor, "[t]he plaintiff bears the burden of negating qualified immunity . . . ." *Id.* "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are

insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (per curiam).  "The court has no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). "Rather, the party opposing summary judgment [must] identify specific evidence in the record and [to] articulate precisely how this evidence supports his claim." *Id.*

A two-pronged inquiry informs the qualified immunity analysis. *Rockwell v. Brown*, 664 F.3d 985, 990-91 (5th Cir. 2011) (citation omitted).  The first prong concerns "whether an official's conduct violated a constitutional right of the plaintiff" while the second asks "whether that right was clearly established at the time of the violation." *Id.* at 991.  "[A] court may conduct the two-pronged qualified immunity inquiry . . . in any sequence." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).  Qualified immunity presents a question of law for the court rather than a question of fact for the jury. *Callahan*, 623 F.3d at 253.

"[T]he test for immunity is solely one of objective reasonableness, any 'subjective intent, motive, or even outright animus [is] irrelevant in a determination of qualified immunity based on arguable probable cause to arrest, just as an officer's good intent is irrelevant when he contravenes settled law.'" *Scribner v. Dillard*, 269 F. Supp. 2d 716, 720 (N.D. Miss. 2003) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000)).  "Even if law enforcement officials erred in concluding that probable cause existed to arrest [the § 1983 plaintiff], they would be entitled to qualified immunity if their decision was reasonable, albeit mistaken." *Lampkin v.*

*City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993) (per curiam).  "[T]he qualified

immunity standard 'gives ample room for mistaken judgments' by protecting 'all but

the plainly incompetent or those who violate the law.'"  *Mangieri v. Clifton*, 29 F.3d

1012, 1017 (5th Cir. 1994) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per

curiam)). "In essence, a plaintiff must allege facts sufficient to demonstrate that no

reasonable officer could have believed his actions were proper." *Callahan*, 623 F.3d

at 253.

B.    <u>Analysis</u>

    1.    <u>Plaintiff's Claims Under Federal Law</u>

    a.    <u>Plaintiff's § 1983 Claims Based on Malicious Prosecution and Abuse of
Process</u>

As an initial matter, Plaintiff's claims under § 1983 for malicious prosecution

and abuse of process are not independently cognizable and will be dismissed.  No

clearly established, freestanding federal constitutional right to be free from

malicious prosecution or abuse of process exists under Fifth Circuit precedent.  *See,*

*e.g.*, *Cevallos v. Silva*, 541 F. App'x 390, 394 (5th Cir. 2013) (per curiam) (The Fifth

Circuit "has rejected a freestanding right to be free from . . . abuse of process.")

(citing *Sisk v. Levings*, 868 F.2d 159, 161-62 (5th Cir. 1989)); *Bloss v. Moore*, 269 F.

App'x 446, 448 (5th Cir. 2008) (per curiam) (The Fifth Circuit "no longer recognizes

a freestanding § 1983 claim for malicious prosecution.") (citing *Castellano v.*

*Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (en banc)).  Defendants are entitled to

judgment as a matter of law as to Plaintiff's § 1983 claims for malicious prosecution

and abuse of process.

b.      Plaintiff's § 1983 Claims for False Arrest

(i)      Plaintiff's Arrest on November 29, 2011

On November 29, 2011, Plaintiff was arrested for embezzlement and molestation.  JCSO Custody Form [139-18].  Based on this arrest, Plaintiff asserts a claim for false arrest deriving from the clearly established Fourth Amendment right to be free from unreasonable seizure of his person.  *See Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (per curiam).  To prevail on this claim, Plaintiff must sufficiently allege and prove that "(1) . . . he was arrested, and (2) the arrest did not have the requisite probable cause."  *Rhodes v. Prince*, 360 F. App'x 555, 558 (5th Cir. 2010) (per curiam) (citing *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655-56 (5th Cir. 2004)).

"The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'"  *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) (per curiam) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).  "A showing of probable cause requires much less evidence than does a finding sufficient to convict."  *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988) (citation omitted).  "As applied to the qualified immunity inquiry, [Plaintiff] must show that [Defendants] could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime."  *O'Dwyer v. Nelson*, 310 F. App'x 741, 745 (5th Cir. 2009) (per curiam)

15

(citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).  To the extent that Plaintiff relies on testimony by Thornton describing Sheriff Byrd's alleged demands that Plaintiff be put in jail by a specific time in order to meet Plaintiff's summary judgment burden and overcome qualified immunity, such reliance is misplaced because the relevant focus is not on the subjective intention or beliefs of Defendants, but on the objective reasonableness of their actions.  *Mangieri*, 29 F.3d at 1017.

Here, probable cause arguably existed to arrest Plaintiff on the charge of child molestation pursuant to Mississippi Code Annotated § 97-5-23.[6]  According to Walley, MW reported to her stepsister, KS, that Plaintiff had been touching MW and had gotten in bed with MW on at least one occasion.  Investigator's Report 1 [139-11].  Plaintiff emphasizes the fact that Walley's report was predicated on hearsay, but hearsay statements may be considered "as part of the totality of the circumstances in determining if there was probable cause."  *Crostley v. Lamar Cnty., Texas*, 717 F.3d 410, 423-24 (5th Cir. 2013).

In addition to Walley's report, in two separate instances of questioning MW reported being touched by Plaintiff and expressed her discomfort with Plaintiff's actions before the decision to arrest Plaintiff was made.  Thornton Dep. 65:2-12 [139-46]; Jones Dep. 18:21-19:12 [139-50]; Tr. of Forensic Interview of MW 4-5, 13-15 [145-6].  During the forensic interview, MW described with some detail the focus

---

[6] Section 97-5-23(2) makes it a felony for anyone over the age of 18 to, "for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, . . . handle, touch or rub with hands or any part of his or her body or any member thereof, any child younger than himself or herself and under the age of eighteen (18) years . . . with or without the child's consent, when the person occupies a position of trust or authority over the child . . . ."

Plaintiff allegedly repeatedly placed on MW's breasts through comments, staring, and photographing.  Tr. of Forensic Interview of MW 4-5, 7, 11, 13-15 [145-6].  MW further related incidents in which Plaintiff touched her breasts while appearing to do so "jokingly[,]" and it would not be objectively unreasonable for Defendants to believe this touching constituted a violation of Section 97-5-23, especially when viewed against the backdrop of MW's account as to Plaintiff's other conduct.  *Id*.  Prior to arresting Plaintiff, Thornton was informed of the results of the forensic interview and the fact that MW had substantiated the allegations of molestation.  Thornton Dep. 91:23-93:10, 94:23-95:5 [139-46].  While the grand jury ultimately declined to indict Plaintiff on the molestation charge based upon the totality of the circumstances, the Court cannot conclude that no reasonable officer could have believed that there was probable cause to arrest Plaintiff on the molestation charge.

The Court's conclusion that probable cause arguably existed to arrest Plaintiff on the molestation charge forecloses the need to evaluate whether probable cause existed to support the arrest the same day on the embezzlement charge.  "If there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause, and the claim for false arrest fails."  *See, e.g.*, *Deville*, 567 F.3d at 164 (per curiam) (quoting *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995)) (emphasis in original).  Because the record supports the conclusion that Thornton's belief that probable cause existed to arrest Plaintiff on the molestation charge was not objectively unreasonable, Defendants are entitled to qualified

17

immunity as to Plaintiff's § 1983 claim for false arrest based on the November 29, 2011, arrest.[7]

(ii)   Plaintiff's False Arrest Allegation Related to Clark and Heck's Search of Plaintiff's Office on November 29, 2011

Plaintiff contends that Clark and Heck detained him when they arrived at Plaintiff's office in Moss Point thus resulting in a seizure cognizable under the Fourth Amendment.  This claim lacks a sufficient basis in the record evidence before the Court and therefore does not create a question of fact.  To satisfy his summary judgment burden, Plaintiff relies upon responses he gave to written interrogatories in which he makes the conclusory statement that both Clark and Heck "arrested [Plaintiff] on November 29, 2011 . . . ."  Pl.'s Answer to First Set of Interrog. Related to Qualified Immunity, Resp. No. 4 [139-44].  Police will be seen as having effected an arrest under the Fourth Amendment "when 'under the totality of the circumstances, a reasonable person would have thought he was not free to leave.'"  *United States v. Webster*, 750 F.2d 307, 320 (5th Cir. 1984) (quoting *United States v. Robinson*, 625 F.2d 1211, 1216 (5th Cir. 1980)).  Plaintiff's bare, conclusory

---

[7] In addition to arguably supporting a finding of probable cause as to the molestation charge, the record would also support a finding of probable cause for arresting Plaintiff for voyeurism in violation of Mississippi Code Annotated § 97-29-61.  That section makes it a crime to "enter[] upon real property whether the original entry is legal or not, and thereafter . . . peep[] through a window or other opening in a dwelling . . . for the lewd, licentious and indecent purpose of spying upon the occupants thereof . . . ."  Miss. Code Ann. § 97-29-61(1).  Both Walley and MW, in her forensic interview, indicated that MW repeatedly saw Plaintiff peering inside MW's bathroom window from outside in the yard while MW showered.  Investigator's Report 1 [139-11]; Tr. of Forensic Interview of MW 4, 8-9, 11-12 [145-6].  This further supports the conclusion that a reasonable officer in Thornton's position would not have believed that he was violating Plaintiff's constitutionally protected rights under the circumstances of this case.  *See Arshad ex rel. Arshad v. Congemi*, No. 08-30061, 2009 WL 585633, at *4 (5th Cir. Mar. 9, 2009) ("[E]ven if there was not probable cause to arrest the plaintiff for the crime charged, proof of probable cause to arrest the plaintiff for a related offense is also a defense to a false arrest section 1983 claim.") (quoting *Mangieri*, 29 F.3d at 1017) (internal marks omitted).

statement that he was arrested does not constitute sufficient evidence to create a question of fact as to whether he was arrested by Clark and Heck. *Eason*, 73 F.3d at 1325 (per curiam) (noting "conclusory allegations are not competent summary judgment evidence, and . . . are insufficient . . . to defeat a motion for summary judgment").

      (iii)   <u>Plaintiff's Arrest on December 6, 2011</u>

Plaintiff has seemingly abandoned his § 1983 claim for false arrest to the extent it was predicated upon his December 6, 2011, arrest. Defendants moved for summary judgment as to this false arrest claim and relied, in part, on the fact that a grand jury subsequently returned an indictment as to the exploitation of a child charge. Mem. in Supp. of Mot. for Summ. J. 12-13 [58]. In opposing summary judgment, Plaintiff did not respond to this argument and therefore is considered as having waived his § 1983 claim premised on the December 6, 2011, arrest. *See, e.g.*, *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.").

Even if the Court were to consider this claim on the merits, Defendants would nevertheless be entitled to qualified immunity. "A magistrate . . . may determine probable cause from evidence inadmissible at trial to determine guilt." *Bennett v. City of Grand Prairie, Tex.*, 883 F.2d 400, 405 (5th Cir. 1989) (citation omitted). The county court judge's probable cause determination underlying the Warrant [139-29] for Plaintiff's arrest on the charge of exploitation of a child establishes that the December 6, 2011, arrest was supported by probable cause and

therefore valid.  Plaintiff has not offered sufficient evidence that the Warrant [139-29] was not facially valid or was otherwise tainted.  Defendants are therefore entitled to qualified immunity to the extent Plaintiff has not abandoned this claim for false arrest.  *Casanova v. City of Brookshire*, 119 F. Supp. 2d 639, 652 (S.D. Tex. 2000) ("Undisputed evidence that an arrest was effectuated under a facially valid arrest warrant satisfies the Fourth Amendment prerequisites and forecloses a § 1983 claim for false arrest.").

        c.     <u>Plaintiff's § 1983 Claims for Unlawful Search and Seizure Related to Property Collected During Defendants' Investigation</u>

        (i)     <u>The November 29, 2011, Search of Plaintiff's Residence</u>

Plaintiff appears to advance a § 1983 claim grounded upon the searches conducted of his residence and of his computers, as well as based upon the seizure of the City of Ocean Springs-issued laptop from Plaintiff's Moss Point office.  To the extent Plaintiff's § 1983 claim for unlawful search and seizure under the Fourth Amendment is predicated on the search of his residence on November 29, 2011, Defendants are entitled to qualified immunity.  "[O]nce facts supporting an arrest are placed before an independent intermediary such as a . . . grand jury, the intermediary's decision breaks the chain of causation for [the] constitutional violations."  *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004) (citation and internal marks omitted).  Claims asserting constitutional violations "may be maintained if the plaintiff affirmatively shows that the deliberations of that intermediary were in some way tainted by the actions of the defendants."  *Id.*

Plaintiff appears to contend that the search warrants applied for and obtained by Thornton on November 29, 2011, contained omissions and were not based on probable cause because Thornton relied almost exclusively on the information reported by Walley, a practice which ran contrary to JCSO internal policy pertaining to obtaining search warrants.  Mem. in Opp'n to Mot. for Summ. J. 12-13 [140].  While the evidence upon which Plaintiff relies may indicate that Thornton prepared the affidavit in support of the search warrant prematurely and that the affidavit may have contained omissions, the evidence does not indicate that Thornton acted intentionally or recklessly in order to "taint" Judge Byrd's independent review and probable cause determination related to issuing a search warrant for Plaintiff's residence.  *See Hernandez v. Terrones*, 397 F. App'x 954, 966 (5th Cir. 2010) (per curiam) (noting there is no freestanding constitutional right to be free from a negligent investigation).  "[O]missions cannot undermine the validity of a warrant unless such omissions are made intentionally or with a reckless disregard for the accuracy of the affidavit; negligent omissions will not undermine the affidavit."  *United States v. Runyan*, 290 F.3d 223, 249 n.6 (5th Cir. 2002) (citation and internal marks omitted).

Plaintiff does not offer competent summary judgment evidence demonstrating that Thornton acted recklessly or that Walley was an unreliable witness.  Thornton was entitled to rely upon Walley in making the probable cause determination.  *See United States v. Fooladi*, 703 F.2d 180, 183 (5th Cir. 1983) (noting that "[w]hen an average citizen tenders information to the police, the police

should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case") (citation omitted).  Consequently, to the extent Plaintiff's §1983 claim for unlawful search and seizure in violation of the Fourth Amendment is based upon the search and seizure which took place at Plaintiff's residence on November 29, 2011, Plaintiff has not carried his summary judgment burden and Defendants are entitled to qualified immunity.

(ii)    The November 29, 2011, Search of Plaintiff's Moss Point Office

To the extent that Plaintiff bases his § 1983 claim for an unlawful search under the Fourth Amendment upon Clark and Heck's search of his Moss Point office, the Court is of the opinion that Plaintiff has not produced sufficient evidence to establish that he had a reasonable expectation of privacy in his office under the particular circumstances of this case.  "Individuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer." *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987).  "Within the workplace context, [the Supreme] Court has recognized that employees may have a reasonable expectation of privacy against intrusions by police."  *Id*. at 716 (plurality opinion) (citing *Mancusi v. DeForte*, 392 U.S. 364, 367-70 (1968)).  "Given the great variety of work environments in the public sector, the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis."[8]  *Id*. at 718 (plurality opinion).

_____

[8] While the *Ortega* plurality's acknowledgement of "the great variety of work environments in the public sector" calls into question whether a reasonable expectation of privacy in a public sector

Plaintiff has not offered any evidence elaborating on any of the circumstances surrounding the physical confines of his office or the rules applicable to his office as set out by his public sector employer.  Plaintiff has not offered any evidence as to the amount of time he spends in his office.  Nor has Plaintiff offered sufficient evidence pertaining to the degree to which items within his office were either closed off from, or exposed to, the public.  Given the fact-specific nature of the inquiry into whether a reasonable expectation of privacy exists in an employee's office, Plaintiff bears the burden of submitting enough evidence to enable the Court to determine whether Plaintiff's expectation of privacy was reasonable so as to give rise to a civil rights claim under the Fourth Amendment.  Plaintiff "has the burden of overcoming a qualified-immunity defense."  *Nance v. New Orleans & Baton Rouge S.S. Pilots' Ass'n*, 174 F. App'x 849, 851-52 (5th Cir. 2006) (per curiam) (citing *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005)).  Because Plaintiff has not brought forth sufficient evidence establishing that he had a reasonable expectation of privacy in his Moss Point office, Defendants Heck and Clark are entitled to qualified immunity on this claim.

(iii)   <u>The November 29, 2011, Seizure of the Laptop Computer Issued to Plaintiff by the City of Ocean Springs</u>

To the extent that Plaintiff's § 1983 claim for unlawful seizure under the Fourth Amendment is grounded upon Clark and Heck's alleged seizure of the laptop issued to Plaintiff by the City of Ocean Springs, the Court is of the view that Plaintiff has not demonstrated that he possessed a reasonable expectation of

---

employee's office constitutes a "clearly established right," the Court need not resolve that issue given the evidentiary gaps in the record.

privacy in the laptop.  The Fourth Amendment prohibition against unreasonable searches and seizures "protects only reasonable expectations of privacy."  *In re U.S. for Historical Cell Site Data*, 724 F.3d 600, 615 (5th Cir. 2013).  To overcome Defendants' assertion of qualified immunity on this claim, Plaintiff must possess a Fourth Amendment right arising from a reasonable expectation of privacy in the laptop issued to him by the City of Ocean Springs, which right must be clearly established.  *See Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997) ("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.") (citation and internal marks omitted).

The parties have not directed the Court to any Supreme Court or Fifth Circuit precedent establishing that a clearly established constitutional right to privacy exists in an employer-issued computer.  Courts considering this issue have reached a variety of conclusions, which suggests that any Fourth Amendment right that an employee may have in an employer- or government-issued laptop would not be considered "clearly established."  *See, e.g.*, *United States v. Ziegler*, 474 F.3d 1184, 1189-90 (9th Cir. 2007) (concluding that plaintiff had a reasonable expectation of privacy in his office and workplace computer); *Muick v. Glenayre Electronics*, 280 F.3d 741, 743 (7th Cir. 2002) (reasoning that plaintiff did not have a reasonable expectation of privacy in his work-issued laptop where his employer previously made clear its authority and ability to inspect laptops); *Leventhal v. Knapek*, 266 F.3d 64, 73-75 (2d Cir. 2001) (finding government employee had

24

reasonable expectation of privacy in employer-issued laptop based on the context of employment relation, the employee's almost exclusive access and use of the computer, the fact the employer did not have a routine procedure of searching employees' laptops, and never put the employee on notice that he should have no expectation of privacy in laptop); *United States v. Simons*, 206 F.3d 392, 398 (4th Cir. 2000) (reasoning employee did not have a legitimate expectation of privacy with regard to the record of his internet use in light of employer's internet policy, which stated that employer would inspect and monitor employees' internet usage as employer deemed appropriate). The record is devoid of details surrounding the circumstances and conditions under which the City of Ocean Springs issued Plaintiff the laptop in question. Because Plaintiff has not demonstrated that under the facts of this case he held a clearly established Fourth Amendment right to privacy in the laptop issued by the City of Ocean Springs, Defendants are entitled to qualified immunity as to Plaintiff's § 1983 claim based on the November 29, 2011, seizure of the laptop.

       d.    <u>Remaining Federal Claims Asserted in the Complaint</u>

The Complaint advances a general claim for "violation of civil rights" premised on Plaintiff's "First, Fourth, and Fourteenth Amendment" rights, Compl. 28-30 [1], along with a claim for "violation of 1st, 4th, and 14th Amendments" based on alleged violations of Plaintiff's right to free speech, right to petition the government for redress of grievances, right to be free from unreasonable searches and seizures, right to due process, and right to remain silent, *id.* at 30-31. The

Complaint also attempts to state a claim for "civil conspiracy and neglect" [sic], which appears to assert that Defendants formed a conspiracy to violate Plaintiff's First, Fourth, and Fourteenth Amendment rights.  Compl. 28-32 [1].

To the extent Plaintiff attempts to assert claims for violations of Plaintiff's Fourth Amendment right against unreasonable searches and seizures, the Court has previously addressed these claims.  *See supra* 14-25.  The record reflects that Plaintiff has not pursued any purported First or Fifth Amendment claims beyond his initial allegations in the Complaint and thus he has abandoned those claims. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[F]ailure to pursue this claim beyond her complaint constituted abandonment.").  Because Defendants are entitled to qualified immunity as to Plaintiff's civil rights claims, Plaintiff's conspiracy claim based on those alleged civil rights violations cannot withstand summary judgment.  *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) ("[A] conspiracy claim is not actionable without an actual violation of section 1983.").  Defendants are entitled to qualified immunity as to the remaining federal claims alleged in the Complaint.

2.    Plaintiff's State Law Claims

Defendants seek judgment as a matter of law on Plaintiff's state law claims on the ground that Defendants are entitled to immunity under the MTCA. Alternatively, Defendants assert that should Plaintiff's claims be considered as falling outside the scope of the MTCA, such claims are time-barred by the applicable statute of limitations.  Plaintiff appears to contend that he can maintain

his state law claims against both Jackson County and these Defendants notwithstanding the MTCA.  Mem. in Opp'n to Mot. for Summ. J. 36-37 [140]. Plaintiff alleges that Defendants were acting in the course of their employment as members of the Jackson County Sheriff's Office at all times, but conversely insists that "[a]t all times . . . Defendants . . . acted willfully, maliciously, . . . and with intentional and wanton disregard" toward Plaintiff's rights.  Compl. ¶¶ 67, 73, 116, 136, 144 [1]; Resp. in Opp'n to Mot. for Summ. J. ¶ 5 [139].

Insofar as Plaintiff takes the position that Defendants were acting within the course and scope of their employment as members of the JCSO, Defendants would be entitled to immunity under the MTCA as to Plaintiff's claims for abuse of process, false arrest, false imprisonment, and intentional infliction of emotional distress.  *See* Miss. Code § 11-46-7(2) (providing that "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties").  Plaintiff's malicious prosecution claim, however, requires proof of malice and thus falls outside the scope of the MTCA regardless of whether Defendants were acting within the course and scope of their employment.  *Weible v. Univ. of S. Miss.*, 89 So. 3d 51, 64 (Miss. Ct. App. 2011) ("[T]orts which require proof of malice as an essential element are excluded from the MTCA" under section 11-46-5(2)) (citation omitted).

To the extent Plaintiff alleges that Defendants acted "maliciously" at all times, the Court will in the alternative consider Plaintiff's remaining claims as falling outside the scope of immunity afforded by the MTCA because "claims as to

which malice is not a necessary element of proof still fall outside the MTCA if the plaintiff alleges that the defendant(s) acted with malice." *Delaney v. Mississippi Dep't of Pub. Safety*, 3:12cv229-TSL-MTP, 2013 WL 286365, at *6 (S.D. Miss. Jan. 24, 2013), *aff'd*, 554 F. App'x 279 (5th Cir. 2014) (per curiam) (citing *Mawson v. Univ. of Mississippi Med. Ctr.*, 3:11cv574-DPJ-FKB, 2012 WL 6649323, at *5 (S.D. Miss. Dec. 20, 2012)).

   a.   <u>Plaintiff's Claims for Abuse of Process, False Arrest, and False Imprisonment</u>

Plaintiff appears to attempt to advance state law claims for abuse of process, false arrest, and false imprisonment against both Jackson County and the individual Defendants. *See* Compl. 21 [1] ("The state law violations occasioned by the Individual Defendants are actionable pursuant to the common law and the [MTCA]."). Even if these claims fall outside the scope of the MTCA, each are barred by the one-year statute of limitations applicable to intentional torts. Miss. Code Ann. § 15-1-35. Under Mississippi law, causes of action for intentional torts generally must "be commenced within one (1) year next after the cause of such action accrued, and not after." *Id.* Plaintiff's claims for abuse of process, false arrest, and false imprisonment constitute intentional torts within the meaning of section 15-1-35. *See, e.g.*, *Harried v. Forman Perry Watkins Krutz & Tardy*, 813 F. Supp. 2d 835, 841 (S.D. Miss. 2011) ("A cause of action for abuse of process, therefore, accrues at 'the termination of the acts which constitute the abuse complained of, and not from the completion of the action which the process issued . . . .' ") (citation omitted); *City of Mound Bayou v. Johnson*, 562 So. 2d 1212, 1217-18

(Miss. 1990) (en banc) (noting a cause of action for "false arrest accrue[s] the day [the arrest] occurred" and a claim for false arrest is subject to the one-year statute of limitation applicable to all intentional torts) (citations omitted); *Parker v. Mississippi Game & Fish Comm'n*, 555 So. 2d 725, 727 (Miss. 1989) (stating that a "complaint for . . . false imprisonment accrue[s] on the date of . . . arrest" and is governed by the one-year statute of limitations set forth in section 15-1-35).

Viewing the facts in the light most favorable to Plaintiff, the final act related to the "abuse" which Plaintiff complains Defendants perpetrated occurred on April 4, 2012, when Thornton submitted a sworn affidavit seeking search warrants for two hard drives previously seized from Plaintiff's residence.  Affs. for Search Warrants [139-34] [139-35].  Because Plaintiff did not file the Complaint in this case until over one year later, on June 24, 2013, Plaintiff's claims for abuse of process, false arrest, and false imprisonment are barred by the one-year statute of limitations.

      b.     <u>Plaintiff's Intentional Infliction of Emotional Distress Claim</u>

Assuming the MTCA does not preclude Plaintiff's claim for intentional infliction of emotional distress, it is nevertheless time-barred by virtue of the one-year statute of limitations contained in section 15-1-35. *Harried*, 813 F. Supp. 2d at 841 (concluding that such a claim based on the filing of an allegedly frivolous lawsuit was not a continuing tort and the limitations period began to run on the date the lawsuit was filed) (citing *Randolph v. Lambert*, 926 So. 2d 941, 945 (Miss. Ct. App. 2006)).  Plaintiff bases his intentional infliction of emotional distress claim

upon the events alleged to have occurred during the investigation, which led to the criminal charges filed against him.  Compl. 25 [1].  These events occurred in November and December 2011, and the prosecution of the criminal charges based on those alleged intentional, wrongful acts does not toll the limitations period. *Gilmer v. Trowbridge*, 3:08cv136-TSL-JCS, 2009 WL 4113711, at *3 (S.D. Miss. Nov. 23, 2009) (reasoning that arrestee's intentional infliction of emotional distress claim was time-barred because the "one-year statute of limitations began to run on the date of the alleged[] 'intentional act which [the arrestee] claim[ed] form[ed] the basis of [his] action,' i.e., the alleged wrongful arrest and detention . . . .") (quoting *CitiFinancial Mortgage Co. v. Washington*, 967 So. 2d 16, 19 (Miss. 2007) (en banc)). Defendants are entitled to judgment as a matter of law as to Plaintiff's claim for intentional infliction of emotional distress.

     c.   <u>Plaintiff's Malicious Prosecution Claim</u>

Unlike Plaintiff's other state law claims, Plaintiff's malicious prosecution claim is not time-barred.  The one-year limitations period contained in section 15-1-35 also controls malicious prosecution claims.  *Coleman v. Smith*, 841 So. 2d 192, 194 (Miss. Ct. App. 2003).  However, this limitations period does not begin to run until a plaintiff is acquitted of the last charges against him.  *McGuffie v. Herrington*, 966 So. 2d 1274, 1278 (Miss. Ct. App. 2007).  Plaintiff filed the Complaint in this case on June 24, 2013, which fell within the one-year period dating back to June 25, 2012, when the grand jury returned a "no true bill" as to the charge of touching a child for lustful purposes.  Jackson County Grand Jury No-Bill

List [139-37].  Although the grand jury indicted Plaintiff as to the charge of exploitation of a child, the Jackson County District Attorney declined to prosecute Plaintiff on this charge and obtained an Order dismissing the charge on November 30, 2012.  Indictment [139-38]; *Nolle Prosequi* 1-2 [139-40].  The grand jury returned a "no true bill" as to the embezzlement charge on November 13, 2012.  Jackson County Grand Jury No-Bill List [139-39].  Thus, this claim is timely filed, and Defendants have not offered any other legal argument as to why this claim should be dismissed.  Defendant's Motion for Summary Judgment as to Plaintiff's state law malicious prosecution claim will therefore be denied.

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that Defendants' Motion for Summary Judgment should be granted in part and denied in part.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Summary Judgment Based on Qualified Immunity [57] filed by Defendants Hope Thornton, Linda Jones, Eddie Clark, and Chad Heck is **GRANTED IN PART** and **DENIED IN PART**.  The Motion is **GRANTED** such that Defendants Thornton, Jones, Clark, and Heck are entitled to qualified immunity as to Plaintiff's individual capacity claims against them under federal law pursuant to 42 U.S.C. § 1983, and these claims against Defendants Thornton, Jones, Clark, and Heck are **DISMISSED WITH PREJUDICE**.  The Motion is further **GRANTED** such that Plaintiff's claims against Defendants Thornton, Jones, Clark, and Heck for abuse of process, false arrest, false imprisonment, and intentional infliction of emotional

distress under Mississippi law are **DISMISSED WITH PREJUDICE**.  The Motion is **DENIED** with respect to Plaintiff's claim for malicious prosecution under Mississippi law, which will proceed.

      **SO ORDERED AND ADJUDGED**, this the 30th day of September, 2014.

<u>*s/ Halil Suleyman Ozerden*</u>
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE